UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BENJAMIN RAGAN,

                    Plaintiff,                         Case No. 1:24-cv-460

v.                                                     Honorable Paul L. Maloney

WELLPATH MEDICAL PROVIDER et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court

will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act,

Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner

action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon

which relief can be granted, or seeks monetary relief from a defendant immune from such relief.

28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se*

complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*,

504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for

failure to state a claim against Defendants Wellpath Medical Provider (Wellpath), Riley, Tracy,

and Blue. The Court will also dismiss, for failure to state a claim, the following claims against

remaining Defendants Travis and Mikel: official capacity claims, First Amendment claims, and

Fourteenth Amendment claims. Plaintiff's Eighth Amendment medical care claims against

Defendants Travis and Mikel in their individual capacities, as well as his state law claims, will remain in the case.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Wellpath and the following LCF medical personnel in their individual and official capacities: Dr. Sarah Riley; Registered Nurses (RNs) Michael Travis, Unknown Tracy, and Unknown Blue; and Health Unit Manager (HUM) N. Mikel.[1] (Compl., ECF No. 1, PageID.1–5.)

In Plaintiff's complaint, he alleges that he "has a serious head injury of a cyst that needs immediate surgery, and is causing Plaintiff to have very bad headaches."[2] (*Id.*, PageID.5.) Plaintiff states that he first received an MRI "at Sue Saint Marie Hospital, located at Kinross Correctional Facility," and the MRI "showed a cyst." (*Id.*) Plaintiff also received a CAT scan at McLaren Memorial Hospital, which "confirmed" the findings from the MRI. (*Id.*, PageID.6.) Plaintiff then had an MRI at Henry Ford Hospital, which "showed nothing was wrong." (*Id.*) A second MRI at Henry Ford Hospital "revealed once again, the aplasia, which is 'a developmental failure resulting in the absence of an organ or tissue.'" (*Id.*)

---

[1] When identifying the Defendants in this action, Plaintiff indicates that he will refer to them as follows: Wellpath as "MP," Dr. Sarah Riley by her name and as "Dr. SR," RN Micheal Travis as "MTRN," RN Unknown Tracy as "Tracy RN," RN Unknown Blue as "Blue RN" and "BRN," and HUM N. Mikel by name and as "HUM." (Compl., ECF No. 1, PageID.2–5.)

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

On April 25, 2023, Plaintiff submitted a medical kite "asking if there was a date set for him to see the off-site doctor for his head injury." (*Id.*) Defendant Travis responded to Plaintiff's kite, stating that Travis did not see any scheduled off-site appointments for Plaintiff. (*Id.*) Three days later, on April 28, 2023, Plaintiff submitted another kite "seeking an expedite[d] appointment to see the neurologist." (*Id.*) Plaintiff states that his kite was forwarded to Defendant Mikel. (*Id.*) In addition to Plaintiff submitting kites on these days, housing unit staff also called unspecified "medical staff on both days." (*Id.*)

Subsequently, on May 3, 2023, Plaintiff was experiencing "bad headaches," and housing unit staff "called medical to inform them that Plaintiff was having bad head pain, at which time, medical staff refused to see Plaintiff." (*Id.*) The next day, May 4, 2023, Plaintiff submitted a kite to "medical staff about being denied medical treatment." (*Id.*) In response, "medical informed him that he was seen upon receiving his previous kite, which [wa]s incorrect, along with informing Plaintiff there was no documented phone calls by Unit C-2 officers regarding his head pain." (*Id.*) Plaintiff then wrote a step I grievance about the matter, stating:

> I have a cyst on my brain and approved to see neurologist. The cyst is causing bad head pain, medical staff at LCF is ignoring all of [the] testing done to determine the medication that works for my head pain (Tramadol). Plaintiff was on this medication when he came to LCF. They changed his meds an[d] that's when all the head pain problems started. They have even put [that] I have been issued medication on a medical kite, but when I got to the medical window, I'm told no such medication has been ordered. Dr. Riley, LCF HUM, and other medical staff are responsible for this.

(*Id.*)

On May 23, 2023, Plaintiff submitted another kite "about speaking to the MP[3] regarding the effect the new mediation and meds had on him, and trying to renew his old meds." (*Id.*,

---

[3] As noted above, Plaintiff indicated that he would refer to Defendant Wellpath as "MP" in his complaint. *See supra* note 1; (*see also* Compl., ECF No. 1, PageID.2.)

PageID.7.) Further, Plaintiff noted that he was "supposed to see MP on or about 5/22/23." (*Id.*) In response, Plaintiff was advised that "he has an appt. with his MP coming up." (*Id.*)

Two days later, on May 25, 2023, Plaintiff had a chronic are visit, and "the MP submitted a non-formulary request for Imetrex during that appointment." (*Id.*) Plaintiff states that "the request was approved on 5/31/23 and [the] medication was ordered," and "[u]ntil the Imetrex arrived Plaintiff was given Tramadol." (*Id.*) However, Plaintiff states that on May 29, 2023, when he went to pick up his medication at the medication line window, there was no medication for him. (*Id.*) Plaintiff submitted a kite about the matter, and on that same day, non-party RN Meyer responded, stating: "I don't see anything in her notes that she was going to order you any headache pain meds. You have the Imetrex. Awaiting appointment to be scheduled for Neuro consult." (*Id.*)

Plaintiff submitted another kite on May 31, 2023, stating: "the cyst on my brain is causing me to have bad head pain. Medical told me I have the Imetrex, but I went to the med window and they told me that I don't have any medication and no med has ever been ordered for me." (*Id.*) On June 1, 2023, Plaintiff again submitted a kite about the matter, stating that "meds were ordered by an offsite Dr., but nurse (on call LCF Doctor for p.m.) refused to give [Plaintiff] the meds." (*Id.*) Defendant Travis responded to Plaintiff's June 1, 2023, kite, stating that "an order was received from offsite NP for Tramadol for 3-days. That expires on 6/2/23. An order was placed for Imetrex on 5/31/23, which will take a couple of days to get here." (*Id.*, PageID.8.)

On June 9, 2023, "Plaintiff requested an appointment to see the MP, so he could let her know that 9-pills a month medication [wa]s not working for his head pain." (*Id.*) In response, Defendant Travis advised Plaintiff that he had "an appointment scheduled with [his] provider, but it is not for a while yet." (*Id.*) On June 13, 2023, the housing unit officer called medical regarding Plaintiff's "bad head pain," and "medical refused to see [Plaintiff]." (*Id.*) Plaintiff claims that "they

told [the] officer that they call[ed] [Plaintiff] over to medical at 12pm, and [Plaintiff] did not come." (*Id.*) Plaintiff states that he did not know that he had a call-out for medical, and he was at his Jehovah's Witness meeting and could not hear "the PA." (*Id.*) Plaintiff submitted a kite about this matter on June 14, 2023. (*Id.*) Plaintiff also submitted a step I grievance about the matter. (*Id.*) Plaintiff's step I grievance was denied, and he then submitted a step II grievance on June 23, 2023. (*Id.*, PageID.9.) Plaintiff's step II grievance was denied by non-party RN Lamb on August 9, 2023. (*Id.*)

At an unspecified time, Plaintiff "filed a medical kite inquiring into [why] the Tylenol he was getting for 20yrs was stopped for his sciatic nerve pain in his lower back." (*Id.*) In response, non-party nurse Villasan advised Plaintiff that Tylenol was "available to purchase on the prisoner store list," and "to kite medical if he [wa]s having back pain." (*Id.*)

On June 21, 2023, Plaintiff asked "how medical could help him with his cyst head pain, as his previous meds didn't work and as of [then] he receive[d] nothing." (*Id.*) Non-party medical staff member Meyer told Plaintiff that "he had Imetrex that he [could] take up to 4 times daily as needed," and that a "neurology consult was scheduled." (*Id.*) On June 24, 2023, Plaintiff submitted a kite complaining about the "severe pain from the cyst on his brain" and that he was "starting to see blurry" and his "balance was off." (*Id.*) In response, Plaintiff was advised that he was "scheduled for another appointment." (*Id.*)

Plaintiff submitted another kite on June 28, 2023, in which he stated that "on 6/26/23 his health appointment was cancelled," and "he was being denied medical treatment for pain caused by [the] cyst on his brain, giving him head pain." (*Id.*) Plaintiff states that a non-party nurse told Plaintiff that he "had Imetrex 4-times a day," which Plaintiff states was false. (*Id.*, PageID.9–10.) Plaintiff states that his June 28, 2023, kite "was forwarded to HUM." (*Id.*, PageID.10.) That same

day, Defendant Mikel responded to Plaintiff's kite, stating that Plaintiff had "Imetrex ordered four times a day as needed," and that Plaintiff had an upcoming appointment with a neurologist in July. (*Id.*)

The following day, June 29, 2023, Plaintiff submitted a medical kite, asking "how he can take Imetrex 4-times a day when he's only given 9-pills a month." (*Id.*) In response, Plaintiff was advised that this was how his provider had ordered the medication, meaning Plaintiff could "take 4 tabs of Imetrex a day as needed, but she did limit it to 9 pills." (*Id.*)

On July 3, 2023, Plaintiff submitted another medical kite about his head pain, and he was advised that he had an upcoming neurology appointment. (*Id.*) Plaintiff submitted additional medical kites about the matter on July 6, 2023, and August 26, 2023. (*Id.*)

On December 24, 2023, Plaintiff submitted a medical kite, again complaining of his head pain, and he stated that he had "been dizzy and ha[d] passed out," and that "when [he] come[s] to [his] heart is beating hard." (*Id.*) In response, "medical staff stated, 'nurse appt. requested.'" (*Id.*, PageID.11.) Plaintiff submitted another medical kite about these issues on January 2, 2024. (*Id.*) On January 8, 2024, Plaintiff also submitted a medical kite requesting "to see someone concerning his heart beating hard and fast with a slight burn/poke." (*Id.*) Non-party RN Schulz responded, noting that she had spoken to Plaintiff over the phone and that Plaintiff had "agreed to [a] nursing appointment." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution, as well as his rights under state law. (*Id.*, PageID.12–16.) As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.17.) Plaintiff also requests his costs for the suit. (*Id.*)

## II.        Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Wellpath and Official Capacity Claims Against Any Defendants Employed by Wellpath

Plaintiff sues Defendant Wellpath and Defendants Riley, Travis, Tracy, Blue, and Mikel in their official and individual capacities. (Compl., ECF No. 1, PageID.3–5.) Defendants Riley, Travis, Tracy, Blue, and Mikel are medical personnel at LCF, and Plaintiff does not indicate whether they are employed by Wellpath, a private entity that contracts with the state to provide healthcare to inmates, or by the MDOC.

Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). That is, an official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). If Defendants are employed by Wellpath, then an official capacity suit is treated as a suit against Wellpath itself.

A private entity, such as Wellpath, that contracts with the state to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, 436 U.S. 658, has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to any Defendants employed by Wellpath, Wellpath's liability, like a municipality's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's constitutional] rights." *Starcher*, 7 F. App'x at 465. Additionally, Wellpath's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted). Here, Plaintiff alleges that "Wellpath breached their contract when they were contacted by the pharmacy (participated) and they disregarded it," and "as their policy and custom, which was the cause of the pain and suffering." (Compl., ECF No. 1, PageID.12.) Further, Plaintiff alleges that "Wellpath MP, while

providing medical service to [Plaintiff] . . . failed to provide adequate medical care, upon repeated request of severe head pain caused by a cyst on [his] brain." (*Id.*)[4]

Although Plaintiff uses the phrase "policy and custom," Plaintiff fails to provide any further explanation or facts about the specific "policy and custom" that Wellpath had that resulted in the alleged violation of any of Plaintiff's constitutional rights. Under these circumstances, Plaintiff fails to allege the existence of a custom or policy of Wellpath, let alone that any policy or custom was the moving force behind his alleged constitutional injury. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987). Furthermore, even liberally construing Plaintiff's complaint, as the Court is required to do, even if Plaintiff intended to suggest the existence of a custom, his allegations are wholly conclusory. *Cf. Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).

Accordingly, because Plaintiff fails to allege the existence of a policy or custom of Wellpath, all of Plaintiff's claims against Wellpath and his official capacity claims against any individual Defendants employed by Wellpath will be dismissed.

---

[4] In addition to these assertions, Plaintiff indicated that he would refer to Wellpath as "MP" in his complaint, and Plaintiff uses this abbreviation when setting forth his factual allegations. However, the manner in which Plaintiff uses "MP" does not imply that he is referring to Wellpath, the entity, because, for example, Plaintiff uses gendered pronouns and describes actions taken by "MP" that could only be taken by an individual, rather than an entity. (*See, e.g.*, Compl., ECF No. 1, PageID.2, 7.) Regardless, even considering these allegations as against Wellpath, as explained herein, Plaintiff fails to allege the existence of a policy or custom of Wellpath, and thus, he fails to state any claim against Wellpath.

**B.     Official Capacity Claims Against Any Defendants Employed by the MDOC**

As to any Defendants employed by the MDOC, a suit against these Defendants in their official capacities is equivalent to a suit against the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages only. (*See* Compl., ECF No. 1, PageID.17.) An official capacity defendant employed by the state is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's official capacity claims against any Defendants employed by the MDOC.

### C.      Defendants Tracy and Blue

As explained below, Plaintiff fails to allege sufficient facts showing how Defendants Tracy and Blue were personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

When setting forth the "counts" in this action, Plaintiff asserts in a conclusory manner that when housing unit officers "called health care to inform them of the bad head pain that they observed [Plaintiff] having," Defendants Tracy and Blue were some of the medical staff who "denied to talk to [Plaintiff]." (*Id.*, PageID.14.) However, Plaintiff fails to provide any supporting facts for this conclusory assertion. Indeed, when setting forth the factual allegations in his complaint, Plaintiff alleges that housing unit officers called healthcare on several occasions and that Plaintiff did not receive treatment in response to these calls, but Plaintiff does not identify any specific medical personnel involved in these calls, let alone Defendants Tracy and Blue. Instead, Plaintiff alleges that on May 3, 2023, housing unit staff "called medical to inform them that Plaintiff was having bad head pain, at which time, *medical staff* refused to see Plaintiff" (*id.*, PageID.6 (emphasis added)), and that on June 13, 2023, the housing unit officer called medical regarding Plaintiff's "bad head pain," and "*medical* refused to see [Plaintiff]." (*Id.*, PageID.8 (emphasis added).) Plaintiff never mentions Defendant Tracy or Defendant Blue by name when setting forth his factual allegations.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to

allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Additionally, any "[s]ummary reference to a single, five-headed 'Defendants' [or medical staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Thus, Plaintiff's claims against Defendants Tracy and Blue fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Accordingly, for these reasons, Plaintiff's claims against Defendants Tracy and Blue will be dismissed.

### D.   First Amendment Retaliation Claims

Plaintiff alleges in a conclusory manner that he was "denied medical treatment as punishment for writing the grievances." (Compl., ECF No. 1, PageID.14.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show

that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

With respect to the first element of a retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references filing at least one grievance. Because the filing of a non-frivolous grievance constitutes protected activity, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has stated the first element of a retaliation claim.

### 2.    Adverse Action

With regard to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Here, Plaintiff claims that he was "denied medical treatment as punishment" for filing grievances. (Compl., ECF No. 1, PageID.14.)

The Sixth Circuit has held that the denial of, or a delay in, medical treatment—including the "discontinuance of medication"—may constitute an adverse action. *See O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. Oct. 17, 2014) (citation omitted) (discussing that a "delay in treatment and discontinuance of medication would likely deter a prisoner . . . who believed he needed the medication to avoid the symptoms from which he allegedly suffered"). As such, at this

14

stage of the proceedings, the Court assumes, without deciding, that the denial of medical care, as alleged by Plaintiff, constitutes an adverse action.

### 3.      Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. As explained below, Plaintiff's allegations regarding this third element of a First Amendment retaliation claim fall short.

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

In this action, although Plaintiff alleges that he filed at least one grievance regarding his medical care before Plaintiff was denied medical treatment—suggesting temporal proximity—nothing in the complaint suggests that Defendants were aware that Plaintiff had filed this grievance. Instead, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no *facts* from which to reasonably infer that Defendants were motivated by any protected conduct. Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show

a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for these reasons, Plaintiff fails to state a First Amendment retaliation claim.

### E.   Eighth Amendment Claims

Plaintiff claims that Defendants Riley, Travis, and Mikel violated his Eighth Amendment rights by providing inadequate medical treatment for his headaches, which Plaintiff attributes to a "cyst on his brain." (*See, e.g.*, Compl., ECF No. 1, PageID.9.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words,

the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal

courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Objective Component

Here, Plaintiff alleges that he "has a serious head injury of a cyst that needs immediate surgery, and is causing Plaintiff to have very bad headaches." (Compl., ECF No. 1, PageID.5.) And, Plaintiff asserts that he frequently had head pain due to the cyst. At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test.

### 2. Subjective Component

#### a. Defendant Riley

When setting forth his factual allegations, Plaintiff only references Defendant Riley when summarizing a step I grievance that he submitted. (*See* Compl., ECF No. 1, PageID.6.) In the grievance, Plaintiff stated that "Dr. Riley, LCF HUM, and other medical staff are responsible for this," referencing the change in his medication. (*Id.*) Then, when setting forth the "counts" in his

action, Plaintiff claims that Defendant Riley "put [Plaintiff] on treatment that was [an] excessive risk to [his] health and safety," and the "treatment also amounted to no treatment at all with 9-pills a month of Imetrex." (*Id.*, PageID.13.) Plaintiff further claims that an unspecified nurse "informed Dr. Riley that it would cause heart problems if [Plaintiff] took Imetrex 4-times a day," and "the pharmacy informed Dr. Riley that they would not fill the order for Imetrex to be taken 4-times day" and "would only prescribe[] 9-pills, amounting to no treatment at all." (*Id.*)

Here, although it is clear that Plaintiff disagreed with Defendant Riley's treatment decision regarding Plaintiff's prescribed medication, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (discussing that prisoners are not entitled to "unqualified access to health care" (citation omitted)). Further, Plaintiff's belief that the prescribed nine pills per month amounted to "no treatment at all" does not support an Eighth Amendment claim against Defendant Riley because, rather than providing no treatment to Plaintiff, the very fact that Defendant Riley prescribed medication to Plaintiff shows that she made a determination about the appropriate treatment for Plaintiff. The fact that Plaintiff did not like this treatment decision does not mean that Defendant Riley did not provide Plaintiff with treatment. Indeed, Plaintiff's own factual allegations show that Defendant Riley did provide treatment to Plaintiff.

Additionally, as to Plaintiff's conclusory claim that an unspecified nurse stated that "Imetrex 4-times a day" could "cause heart problems," the fact that a medication may have side effects does not on its own show deliberate indifference. *See, e.g.*, *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394, at *7 (W.D. Mich. Mar. 5, 2009) (discussing that "medication adjustments involve the doctor's medical judgment regarding plaintiff's treatment," and a

plaintiff's "disagreement with the health care providers regarding his diagnosis and treatment does not rise to the level of a federal constitutional violation" (citations omitted)); *Christensen v. United States*, No. 5:11-321-KKC, 2013 WL 4521040, at *4 (E.D. Ky. Aug. 26, 2013) (discussing that the doctor's "decision to continue [the inmate's] prescription for [the medication that caused side effects] was evidently based upon her medical judgment that its benefits to his long-term cardiac health outweighed its detrimental side effects"). Plaintiff's vague and conclusory assertion in the "counts" section of the complaint regarding potential side effects of the medication is insufficient to show that Defendant Riley was deliberately indifferent to Plaintiff's serious medical needs by prescribing this medication. *Cf. Mason v. Eddy*, No. 1:18-cv-2968, 2019 WL 3766804, at *11 (N.D. Ohio Aug. 9, 2019) ("[T]he prescribing of drugs by a physician[, or other medical provider,] which causes side effects does not constitute deliberate indifference." (citations omitted)).

Accordingly, for the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendant Riley will be dismissed.

### b.    Defendants Travis and Mikel

As to Defendants Travis and Mikel, Plaintiff alleges that they received some of Plaintiff's medical kites regarding his requests to see a neurologist and his requests for pain medication, which Plaintiff alleges was not available when he went to the medicine line. The Court notes that most of Plaintiff's allegations regarding the various medical kites that he submitted do not support a claim against Defendants Travis and Mikel because Plaintiff simply alleges that he heard from "medical" or that "they" responded, rather than identifying any of the individuals involved. Nonetheless, the scant allegations against Defendants Travis and Mikel are sufficient at this stage of the proceedings to preclude the dismissal of Plaintiff's Eighth Amendment claims against Defendants Travis and Mikel on initial review. Accordingly, although Plaintiff has by no means

proven his claims, the Court will not dismiss Plaintiff's Eighth Amendment medical care claims against Defendants Travis and Mikel in their individual capacities at this time.

### F.    Fourteenth Amendment Claims

When setting forth his claims, Plaintiff asserts that Defendants violated his Fourteenth Amendment rights by providing inadequate medical care. (*See, e.g.*, Compl., ECF No. 1, PageID.13–16.)

To the extent that Plaintiff intended to bring a procedural due process claim regarding the medical care that he received, Plaintiff fails to state such a claim. To show a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Here, Plaintiff's right to receive medical care is not the type of protection afforded by procedural due process. *See DeShaney v. Winebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989). Instead, the Sixth Circuit has recognized that, to the extent the right to medical care is a due process right, it is "a substantive due process right . . . ." *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187 (6th Cir. 2022).

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting

*Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

However, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to protect Plaintiff's right to receive medical care. *See supra* Section II.E. Furthermore, nothing in the complaint suggests that Defendants engaged in the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claim will be dismissed.

Accordingly, for all of the reasons set forth above, any intended Fourteenth Amendment procedural and substantive due process claims will be dismissed.

G.     **State Law Claims**

Plaintiff alleges that Defendants violated state law. (*See, e.g.*, Compl., ECF No. 1, PageID.12–16.)

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

With respect to Defendants Wellpath, Riley, Tracy, and Blue, because Plaintiff's federal claims against these Defendants will be dismissed, the Court will dismiss Plaintiff's state law claims against these Defendants without prejudice because the Court declines to exercise supplemental jurisdiction over them. As to Defendants Travis and Mikel, because Plaintiff continues to have pending federal claims against these Defendants, the Court will exercise supplemental jurisdiction over his state law claims against Travis and Mikel.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Wellpath, Riley, Tracy, and Blue will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims against Defendants Wellpath, Riley, Tracy, and Blue without prejudice because the Court declines to exercise supplemental jurisdiction over them. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Travis and Mikel: official capacity claims, First Amendment claims, and Fourteenth Amendment claims.

Plaintiff's Eighth Amendment medical care claims against Defendants Travis and Mikel in their individual capacities, as well as his state law claims, will remain in the case.

     An order consistent with this opinion will be entered.


Dated:   June 24, 2024                      /s/ Paul L. Maloney
_____           _____
                                       Paul L. Maloney
                                       United States District Judge